# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| L. JAMES RICHARDS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| V. | : | |
| | : | **1:03-CV-2282** KWS |
| WELLS REAL ESTATE FUNDS, | : | |
| INC., and WELLS CAPITAL, | : | |
| INC., | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

## COMPLAINT

The plaintiff, L. James ("James") Richards, states his complaint against the above-named defendants as follows:

## I.

## PRELIMINARY STATEMENT

1.

This is a civil rights action for money damages, equitable relief and declaratory relief brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended by the Civil Rights Act of 1991.

1

FORMS RECEIVED
Consent To US Mag.
Pretrial Instructions
Title VII NTC
Drop off

## II.

### JURISDICTION AND VENUE

2.

The plaintiff asserts that defendants discriminated against him on the basis of religion in violation of Title VII, 42 U.S.C. §2000e *et seq.*.

3.

This Court accordingly has jurisdiction over the federal claims in this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §2000e-5(f) & (g).

4.

Venue is properly laid in this Court by virtue of the fact that the defendants regularly do business in this District and Division, because plaintiff's employment interview with the defendants was in this District and Division, and because a significant portion of the wrongful conduct occurred in the Northern District of Georgia, Atlanta Division. Venue is accordingly proper in this district and division pursuant to 42 U.S.C. §2000e-5(f)(3).

2

### III.

### PARTIES

5.

Plaintiff James Richards is a citizen of the United States who is a resident of Minnesota.

6.

Defendant Wells Real Estate Funds, Inc., is a Georgia Corporation. It is subject to actions of this kind and nature and may be served through its registered agent, Leo F. Wells, III, at 6200 The Corners Parkway, Suite 250, Norcross, GA 30092.

7.

The defendant Wells Capital, Inc. is a Georgia Corporation. It is subject to actions of this kind and nature and may be served through its registered agent, Leo F. Wells, III, at 6200 The Corners Parkway, Suite 250, Norcross, GA 30092.

### IV.

### FACTUAL ALLEGATIONS

8.

Plaintiff applied for the position of Regional Vice President with Wells Real Estate Funds, Inc., and/or Wells Capital, Inc.. He was interviewed for this position on several dates beginning on or about January 22, 2001 and ending on or about February 16, 2001.

3

9.

Plaintiff initially heard about the position through a management recruiter. His first direct contact with the company consisted of a telephone interview with Becky Padgett, who worked in the company's Human Resources department. During the conversation Ms. Padgett discussed what she characterized as the company's "Christian Culture" and asked the plaintiff if it made him "uncomfortable".

10.

About two weeks later the plaintiff had a telephone interview with Gary Parnaby, Vice President of National Sales at Wells. During the interview, Mr. Parnaby reviewed plaintiff's business background and qualifications and Wells' corporate goals. He also described what he called the company's "Christian Culture", explaining: 1) that the company did not permit the use of alcohol or profanity and had strict behavior and dress codes; 2) that the company's leader, Leo Wells, is a religious person and they have prayer meetings and Bible study on site; and, 3) that the plaintiff should expect Leo Wells to discuss the plaintiff's "spirituality". Mr. Parnaby added, "I have about everybody here," mentioning a number of Christian denominations, and then adding, "except Buddhists." Mr. Parnaby then asked the plaintiff if he would like

4

to "volunteer" information about his "spiritual background" so that
he could "make a note of it."  The plaintiff responded that he "was
brought up Fundamentalist".

11.

Company President Leo Wells was at all times relevant to this
complaint an active member of Fellowship Bible Church, a
fundamentalist Christian church.

12.

The defendants invited the plaintiff to come to company
headquarters for an on-site interview.  A few days before the
scheduled visit Becky Padgett of the company's Human Resources
department called the plaintiff and described the series of
interviews and testing that was planned for him.  She also
discussed the company's "Christian Culture" and said that Mr. Wells
was likely to talk with the plaintiff as much about his
"spirituality" as about the job requirements.

13.

Plaintiff's initial on-site interview was with Gary Parnaby,
Vice President of National Sales.  Mr. Parnaby told the plaintiff
that the plaintiff was a "finalist" for the position of Regional
Vice President.  He once again mentioned the company's "Christian
Culture".

14.

Plaintiff also interviewed with company President Leo Wells. They initially discussed plaintiff's background and qualifications, and then the company's goals. Mr. Wells then discussed what he termed the "quirky" corporate culture at the company, describing prayer meetings and Bible studies on site. He asked the plaintiff whether this would make him uncomfortable.

15.

Wells then made very direct inquiries regarding the plaintiff's religious background and current religious practices. In responding, the plaintiff said that he and his wife had been brought up in Baptist homes but did not attend Baptist churches any more, although they still shared many of those values. The plaintiff also said that he did not currently attend church regularly, that he had attended a number of meetings at a Unitarian Universalist Congregation building, and that they did have ecumenical services in the summer on-site at their lake community.

16.

Shortly after lunch Gary Parnaby and Sharon Brown, Wells' Senior Vice President of Human Resources, met with the plaintiff. Ms. Brown told the plaintiff that the company had decided to "keep looking" to fill the position. She said that their decision was

6

not based on plaintiff's qualifications or background but that they knew "what their clients wanted" and that he was not a good "fit".

17.

During the interview process, company representatives repeatedly discussed the religious views and practices of the company's employees and leaders and sought information about plaintiff's religious views. The plaintiff was under very active consideration for the position  of Regional Vice President until the point at which, in response to more specific questioning by company President Leo Wells about his religious affiliations, he revealed that he did not at present regularly attend religious services and that he had regularly attended services at a Unitarian Universalist Congregation building.

18.

The plaintiff applied for a position that one or both of the defendant companies had available and was well qualified for the position in question.  Despite his good qualifications, his application was rejected.  The position remained open thereafter and the company continued to seek applicants for it.  On information and belief, the individual who was eventually hired to fill the position had poorer qualifications for it than did the plaintiff.

7

19.

Plaintiff's religious views and practices, as perceived by the defendant and its agents (i.e., his participation in meetings at Unitarian Universalist Congregation building, his lack of affiliation with a fundamentalist Christian church, and/or his lack of religious practice), differed from those of defendants' leadership and (on information and belief) from those of a majority of its employees.

20.

There was no legitimate basis for defendants to reject plaintiff's application for employment.

21.

Defendants' tortious actions toward plaintiff caused him to suffer severe emotional distress and anxiety, as well as the loss of a valuable employment opportunity and the impairment of his professional reputation.

## V.

### SUBSTANTIVE ALLEGATIONS

### COUNT ONE: DISCRIMINATION ON THE BASIS OF RELIGION IN VIOLATION OF 42 U.S.C. § 2000e

22.

The allegations contained in the foregoing paragraphs are

8

incorporated herein by this reference.

23.

Plaintiff Richards sought to be hired by one or both of the defendants, within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*.

24.

On information and belief, each of the defendants, at all times relevant to this complaint, has been engaged in interstate commerce and has had more than fifteen (15) employees. Defendants are each an "employer" within the meaning of 42 U.S.C. § 2000e(b).

25.

Plaintiff filed a timely charge of discrimination against defendant Wells Real Estate Funds, Inc., with the Equal Employment Opportunity Commission ("EEOC"). The entity with which plaintiff had interviewed had identified itself in communications with him as Wells Real Estate Funds. In response to a reported allegation by Wells Real Estate Funds, Inc., that the position plaintiff sought would have made him an employee of Wells Capital, Inc., plaintiff filed an amended EEOC Charge which named Wells Capital, Inc., and several other closely-related Wells entities as additional respondents.

26.

The EEOC issued a "Cause" determination regarding plaintiff's

9

Charge. Plaintiff subsequently obtained a Notice of Right to Sue from the EEOC.

27.

This suit is being filed within ninety (90) days of the plaintiff's receipt of a Notice of Right to Sue from the EEOC.

28.

One or both of the defendants failed or refused to hire the plaintiff in whole or in part because of his religion.

29.

During the job application process, defendants' agents made extremely frequent references to religious practices within the company and extremely frequent inquiries regarding both whether the plaintiff was comfortable with such practices and what was the nature of his own religious affiliations. Such frequent inquiries would tend to prompt many job applicants who are not practicing Christians to abandon their applications.

30.

Defendants afforded more favorable consideration to applicants whose religious views and practices conformed more closely to the fundamentalist Christian views of their leadership and a majority of their employees than did plaintiff's.

31.

One or both defendants violated Title VII of the Civil Rights

10

Act of 1964, as amended, by discriminating against plaintiff on account of his religious views and practices in determining whether to hire him.

## VI.

### PRAYER FOR RELIEF

32.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

a)   that this Court declare that defendants' actions, policies and practices complained of herein violate the rights of plaintiff as secured by Title VII, 42 U.S.C. § 2000e;

b)   that plaintiff be placed in the employment position with defendants that he would have obtained absent unlawful discrimination, with the remuneration (including salary, commissions, bonuses, fringe benefits, expense allowances, etc.) and conditions of employment he would have received absent unlawful discrimination;

c)   that plaintiff be awarded the accrued remuneration (including salary, commissions, bonuses, fringe benefits, expense allowances, etc.) he would have received absent unlawful discrimination, and (absent the relief of job

11

placement sought in the preceding subparagraph) an award of front pay and benefits in an amount sufficient to compensate plaintiff for the losses of future pay and fringe benefits he will suffer;

d)   that appropriate compensatory damages be awarded to the plaintiff and against defendants, including damages for emotional distress and damage to his good name and professional reputation, in an amount to be determined by the enlightened conscience of the jury;

e)   that punitive damages be awarded to the plaintiff and against defendants in an amount to be determined by the enlightened conscience of the jury;

e)   that plaintiff be awarded pre-judgment interest;

f)   that plaintiff be awarded his costs, out of pocket expenses, and reasonable attorney fees in this action;

g)   that plaintiff be awarded such other relief as the Court deems just and proper;

h)   and that the within action be tried by a jury.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

12

Respectfully submitted, this July 29, 2003.

COUNSEL FOR PLAINTIFF

GEORGIA KAY LORD
Georgia Bar No. 447932

LAW OFFICE OF GEORGIA LORD, P.C.
755 Commerce Drive, Suite 800
Decatur, GA 30030
404/601-4132
Facsimile: 404/601-4133

# United States District Court

NORTHERN ——— DISTRICT OF ——— GEORGIA

L. JAMES RICHARDS,

      Plaintiff,

      V.

WELLS REAL ESTATE FUNDS, INC.,
and WELLS CAPITAL, INC.,

      Defendants.

## SUMMONS IN A CIVIL CASE

CASE NUMBER: **1:03 CV - 2282**

TO: (Name and address of defendant)

    WELLS REAL ESTATE FUNDS, INC.
    c/o Leo F. Wells, III
    6200 The Corners Parkway, Suite 250
    Norcross, GA 30092.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

    Georgia K. Lord ,
    Law Office of Georgia Lord, P.C.
    755 Commerce Drive, Suite 800
    Decatur, Georgia 30030

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

---
CLERK

_J. Duggy_

BY) DEPUTY CLERK

JUL 30 2003

---
DATE

# United States District Court

NORTHERN ——— **DISTRICT OF** ——— GEORGIA

L. JAMES RICHARDS,

      Plaintiff,

      **V.**

WELLS REAL ESTATE FUNDS, INC.,
and WELLS CAPITAL, INC.,

      Defendants.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:   **1:03-CV-2282**

TO: (Name and address of defendant)

      WELLS CAPITAL, INC.
      c/o Leo F. Wells, III
      6200 The Corners Parkway, Suite 250
      Norcross, GA 30092.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

      Georgia K. Lord
      Law Office of Georgia Lord, P.C.
      755 Commerce Drive, Suite 800
      Decatur, Georgia 30030

an answer to the complaint which is herewith served upon you, within   **20**   days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**LUTHER D. THOMAS**

JUL 30 2003

CLERK                     DATE

J. Driggs

(BY) DEPUTY CLERK